## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

MARK JENKINS
Prison Number Z-527

     Plaintiff,

     v.

JOHN HAMM, Commissioner,
Alabama Department of Corrections,

and

TERRY RAYBON, Warden,
William C. Holmon Correctional
Facility,

and

JOHN DOES I-X,
Individually and in their official
capacities,

     Defendants.

Case No. 2:25-cv-00676-RAH

CAPITAL CASE

## **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

J. Andrew Pratt
Joshua Toll
Kathryn Lehman
Samuel R. Diamant
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
(404) 572-4600
apratt@kslaw.com
jtoll@kslaw.com
klehman@kslaw.com
sdiamant@kslaw.com

October 27, 2025

# <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 4

I.      THE PARTIES.............................................................................................. 4

      A.    Plaintiff Mark Jenkins ..................................................................... 4

      B.    The Defendants................................................................................ 6

II.     ALABAMA PREPARES FOR NITROGEN HYPOXIA EXECUTIONS ....... 6

III.   THE CRUEL EXECUTIONS BY NITROGEN HYPOXIA............................ 7

IV.   THE REDACTED PROTOCOL LACKS NECESSARY SAFEGUARDS AND WILL LEAD TO JENKINS BEING EXECUTED IN AN UNCONSTITUTIONAL MANNER .......................................................... 9

LEGAL STANDARD........................................................................................ 10

ARGUMENT .................................................................................................... 11

I.      JENKINS PLEADS A PLAUSIBLE EIGHTH AMENDMENT CLAIM (CLAIM 1) ......................................................................................................... 11

      A.    Jenkins's Complaint Alleges Cruel and Unusual Punishment ............... 14

      B.    Jenkins has Properly Alleged Alternative Methods of Execution that are Readily Available.......................................................................... 17

II.     JENKINS PLEADS A PLAUSIBLE AS-APPLIED EIGHTH AMENDMENT CLAIM (CLAIM 2) ................................................................................... 23

III.   JENKINS PLEADS A PLAUSIBLE SIXTH AMENDMENT CLAIM (CLAIM 3)....... 27

IV.   JENKINS PLEADS PLAUSIBLE FREE EXERCISE AND RLUIPA CLAIMS (CLAIMS 4 & 5)........................................................................................ 29

      A.    Jenkins's RLUIPA Claim (Claim 5) .................................................. 31

      B.    Jenkins's Free Exercise Claim (Claim 4) ........................................... 33

V.     JENKINS PLEADS A PLAUSIBLE FOURTEENTH AMENDMENT CLAIM (CLAIM 6).................................................................................................. 35

CONCLUSION ................................................................................................................ 43

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arthur v. Thomas*,
  674 F.3d 1257 (11th Cir. 2012) ...................................................................36

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................11, 38

*Baze v. Rees*,
  553 U.S. 35 (2008)........................................................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................1

*Bucklew* v. *Precythe*,
  587 U.S. 119 (2019).................................................................12, 13, 20, 23

*City of Grants Pass, Oregon v. Johnson*,
  603 U.S. 520 (2024)......................................................................................17

*Cooey v. Kasich*,
  801 F. Supp. 2d 623 (S.D. Ohio 2011) .......................................................36

*Dorman v. Aronofsky*,
  36 F.4th 1306 (11th Cir. 2022) ...................................................................33

*Gissendaner* v. *Comm'r, Ga. Dep't of Corr.*,
  779 F.3d 1275 (11th Cir. 2015) ...................................................................42

*Grayson v. Comm'r, Ala. Dep't of Corr.*,
  121 F.4th 894 (11th Cir. 2024) ...............................................................3, 10

*Grayson v. Dunn*,
  156 F. Supp. 3d 1340 (M.D. Ala. 2015)......................................................20

*Grayson v. Hamm*,
  2024 WL 4701875 (M.D. Ala. Nov. 6, 2024) ......................................*passim*

*Greene v. Ala. Dep't of Revenue*,
  2017 WL 4236562 (M.D. Ala. Sept. 25, 2017)............................................24

*Hakim v. Hicks*,
    223 F.3d 1244 (11th Cir. 2000) ..............................................................34

*Hoffman. v. Jindal*,
    2014 WL 130981 (M.D. La. Jan. 10, 2014) ....................................36, 37

*Jones v. Commissioner, Georgia Department of Corrections*,
    811 F.3d 1288 (11th Cir. 2016) ..............................................................38

*In re Kemmler*,
    136 U.S. 436 (1890)................................................................................12

*Miller v. Hamm*,
    640 F. Supp. 3d 1220 (M.D. Ala. 2022)....................................12, 13, 18, 23

*Mills v. Hamm*,
    102 F.4th 1245 (11th Cir. 2024) .............................................................27

*Missouri v. Frye*,
    566 U.S. 134 (2012)................................................................................28

*Nance v. Ward*,
    597 U.S. 159 (2022).................................................................18, 21, 22

*Nance v. Ward*,
    Case No. 1:20-cv-00107-JPB .................................................................21

*Pielage v. McConnell*,
    516 F.3d 1282 (11th Cir. 2008) .............................................................11

*Price v. Comm'r, Dep't of Corr.*,
    920 F.3d 1317 (11th Cir. 2019) ......................................................12, 14

*Ramirez v. Collier*,
    595 U.S. 411 (2022)................................................................................31

*Sepulvado v. Jindal*,
    729 F.3d 413 (5th Cir. 2013) .................................................................39

*Smith v. Hamm*,
    2024 WL 116303 (M.D. Ala. Jan. 10, 2024)..................................*passim*

*Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*,
   623 F.3d 1371 (11th Cir. 2010) ............................................................26

*Turner v. Safley*,
   482 U.S. 78 (1987)...............................................................................34

*Wilson v. Hamm*,
   2025 WL 794447 (M.D. Ala. Mar. 12, 2025) ..............................*passim*

*Woods* v. *Comm'r, Ala. Dep't of Corr.*,
   951 F.3d 1288 (11th Cir. 2020) ...........................................................36

*Woods v. Dunn*,
   2020 WL 1015763 (M.D. Ala. Mar. 2, 2020) ..............................38, 39

## Other Authorities

Alabama Act 2018-353 ....................................................................................6

Ala. Code. § 15-18-82.1... ............................................................................22

Bickler, P.E. & Lipnick, M.S., *Evidence Against Use of Nitrogen for the Death Penalty*, 331 JAMA 2075 (2024).......................................26

Fed. R. Civ. P. 8 ...........................................................................................10, 14

## INTRODUCTION

Plaintiff Mark Jenkins ("Jenkins") challenges the Alabama Department of Corrections' ("ADOC") heavily redacted protocol providing for execution by nitrogen hypoxia (the "Redacted Protocol"), *see* ECF No. 1-1. Jenkins need only allege facts beyond "a formulaic recitation of the elements of a cause of action" with sufficient basis in fact "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Here, Jenkins provides detailed allegations regarding the superadded pain from multiple minutes of slow suffocation by nitrogen gas, as compared to alternative methods. *See* Compl. (ECF No. 1).

For example, Jenkins includes the multiple eye-witness accounts from five executions by nitrogen hypoxia during which the condemned men suffered prolonged and painful deaths. *See* Compl. ¶¶ 34–59. Jenkins then describes the profound distress that will be triggered by his body's response to forced inhalation of nitrogen gas which will be exacerbated by both (i) the apparent defects in the ADOC's Redacted Protocol and (ii) Jenkins's diagnosed post-traumatic stress and panic disorders resulting from horrific abuse by his stepfather and mother during his childhood. *See id*. ¶¶ 60–76. Jenkins further alleges two alternative execution methods—(i) modifications to the Redacted Protocol to remedy its deficiencies; or (ii) execution by firing squad—that would reduce the risk of harm to Jenkins during

1

his execution. *See id*. ¶¶ 77–81. Jenkins brings this action against Defendants John Hamm (the Commissioner of the ADOC) and Terry Raybon (the Warden of William C. Holman Correctional Facility in Atmore, Alabama ("Holman Correctional Facility")) ("Defendants") in their official capacities to obtain declaratory and injunctive relief against the Redacted Protocol's violations of his constitutional and civil rights.[1]

Notably, this Court has consistently held that challenges to the ADOC's method of execution by nitrogen hypoxia state a claim for relief at the pleadings stage. *See Smith v. Hamm*, 2024 WL 116303, at *10, 15 (M.D. Ala. Jan. 10, 2024) (Huffaker, J.) (finding plausible claims under the Eighth Amendment, First Amendment free exercise clause, and RLUIPA); *Grayson v. Hamm*, 2024 WL 4701875, at *13–14 (M.D. Ala. Nov. 6, 2024) (Huffaker, J.) (finding plausible claims under the Eighth Amendment); *Wilson v. Hamm*, 2025 WL 794447, at *7– 9

---

[1] Jenkins brings claims for (i) Eighth and Fourteenth Amendment violations of his right to be free from cruel and unusual punishment, both facial (First Claim for Relief) and as-applied to himself (Second Claim for Relief); (ii) Sixth Amendment violations of his right to access to counsel (Third Claim for Relief); (iii) violations of his religious liberty rights under the First Amendment (Fourth Claim for Relief) and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (Fifth Claim for Relief); and (iv) Fourteenth Amendment Due Process violations (Sixth Claim for Relief).

(M.D. Ala. Mar. 12, 2025) (Marks, J.) (finding plausible facial and as-applied claims under the Eighth Amendment); *see also Grayson v. Comm'r, Ala. Dep't of Corr.*, 121 F.4th 894, 898 (11th Cir. 2024) ("a substantial risk of conscious suffocation can create an Eighth Amendment problem regardless of the method of execution being used"). The Court should hold the same here.

Despite this prevailing law, Defendants move to dismiss Jenkins's Complaint in its entirety (ECF No. 19, the "Motion" or "Motion to Dismiss") in a clear attempt to advance fact-intensive evidentiary issues not properly resolved on the pleadings. The Motion is properly denied for the following main reasons:

**First**, Jenkins plausibly alleges the substantial risk of severe pain over and above death itself, (*see e.g.,* Compl. ¶¶ 3–4, 6, 14, 34, 37, 39, 50, 57, 60, 61, 63, 84, 86), along with feasible alternatives to reduce that risk. *Id.* ¶¶ 77–81. Contrary to Defendants' arguments, nothing more is required to plausibly allege an Eighth Amendment facial challenge to a method of execution.

**Second**, Jenkins has pleaded specific facts about his childhood trauma and history of panic attacks and triggers to state a plausible claim for an as-applied challenge, (*id.* ¶¶ 11–14), and Defendants' attempts to impugn the credibility of family member witnesses from prior proceedings is not appropriate at the pleadings stage.

***Third***, Jenkins has plausibly alleged that under the Sixth Amendment his counsel must be able to observe key proceedings such as the placement of the mask and at least have audio available in the adjacent observation rooms. *Id*. ¶¶ 96–100.

***Fourth***, Defendants' arguments regarding prayer and spiritual advisors during prior executions are outside the scope of the pleadings. And Jenkins has plausibly alleged violations of his religious interests in praying audibly and being near his spiritual advisor at the time of his death. *Id*. ¶¶ 101–15.

***Fifth***, and finally, the ADOC's failure to disclose an unredacted protocol violates Jenkins's Fourteenth Amendment due process rights, as Jenkins has a liberty interest in reviewing the full protocol in order to bring any challenge. *Id*. ¶¶ 116–20.

For all of these reasons, and those described in detail below, Defendants' Motion to Dismiss is properly denied in its entirety. And to the extent that any part of the Motion is granted, Jenkins should be granted leave to amend.

## FACTUAL BACKGROUND

Jenkins's Complaint contains factual allegations which are properly taken as true at this stage. A summary of the relevant allegations to this Motion follows:

## I.    THE PARTIES

### A.    Plaintiff Mark Jenkins

Plaintiff Mark Jenkins is an Alabama resident who is incarcerated at the

Holman Correctional Facility and is sentenced to death. *See id.* ¶ 10. Jenkins elected to be executed by nitrogen hypoxia in 2018, without any understanding of how nitrogen hypoxia would be carried out, and before the ADOC had developed its protocol for execution by nitrogen hypoxia. *See id.* ¶¶ 29, 31, Ex. 2. Jenkins expressly preserved his rights to "challenge the constitutionality of any protocol adopted for carrying out executions by nitrogen hypoxia," (*see id.* ¶ 32, Ex. 2), after that protocol was developed and when further information became available.

Jenkins was brutally abused as a child at the hands of his mother and step-father. *See id.* ¶ 11. Jenkins was born as the result of an extramarital affair between his mother, Donna Jo Jenkins, and a sailor, while her husband, Steven Jenkins, Sr., was incarcerated. *Id.* Jenkins's mother abused drugs and drank heavily. *Id.* ¶ 12. She routinely neglected Jenkins and abused Jenkins by failing to bathe him, leaving him unattended under the sink, locking him in a back room shared with the family dog, forcing him to spend prolonged periods of time in soiled diapers, and shoving dirty diapers into Jenkins's face and onto his body. *Id.* Jenkins's stepfather returned from prison when Jenkins was three years old and beat Jenkins with wood 2 by 4s, belts, shovels, coat hangers, and other household items. *Id.* ¶ 13. These beatings occurred daily from the age of three to thirteen, which is when Jenkins ran away from home. *Id.*

Jenkins's abuse as a child resulted in diagnosed chronic panic disorder and post-traumatic stress disorder ("PTSD"). *Id.* ¶¶ 6, 14. Jenkins's diagnosed panic disorder takes the physical form of regular and severe anxiety attacks. *Id.* ¶ 14. During these attacks, Jenkins exhibits physical symptoms of uncontrollably crying, coughing, heaving, and hyperventilating. *Id.* During the time of his execution by nitrogen hypoxia Jenkins is "highly likely to suffer a similar debilitating attack." *Id.*

### B.    The Defendants

Defendant John Hamm is the commissioner of the ADOC. Compl. ¶ 15. He is the final executive authority responsible for carrying out death sentences against condemned persons in Alabama. *Id.* Defendant Terry Raybon is the Warden of the Holman Correctional Facility, the ADOC facility where death sentences are carried out. *Id.* ¶ 16. He is responsible for management of the Holman Correctional Facility and the oversight and conduct of operations there, including the oversight and conduct of executions carried out at the facility. *Id.* Defendants John Does I-X are employed by, or contracted with, the ADOC to consult with, prepare for, and/or carry out Jenkins's execution. At this time, Defendants have not revealed their identities or positions. *Id.* ¶ 17.

## II.    ALABAMA PREPARES FOR NITROGEN HYPOXIA EXECUTIONS

On June 1, 2018, the Alabama legislature enacted Alabama Act 2018-353 (the "Act"), which provided condemned persons on death row the option to elect

execution by nitrogen hypoxia. *Id*. ¶ 27. At that time, nitrogen hypoxia had never been used to execute people. *Id*.

Under the terms of the Act, condemned persons on death row had thirty days to notify the warden of their election. *Id*. ¶ 28. This election had to be made without the benefit of reviewing or knowing how execution by nitrogen hypoxia would occur because no protocol had been drafted. *Id*. Approximately four days before the thirty-day statutory deadline, the then-warden at Holman Correctional Facility was ordered by ADOC to notify the condemned persons on death row of the recent change in the law by distributing "Election to be Executed by Nitrogen Hypoxia" forms. *Id*. ¶ 29. Jenkins elected nitrogen hypoxia without any understanding of how it would be carried out. *Id*. ¶ 31. Several years later, in 2023, the ADOC released its heavily redacted nitrogen hypoxia protocol attached to the Complaint. *See id*. ¶ 33, Ex. 1. The unredacted protocol has never been provided to Jenkins. As a result, Jenkins's current challenges are based solely on the Redacted Protocol attached as Exhibit 1 to the Complaint. The redactions make it difficult for Jenkins to fully review and appreciate the risks of the Redacted Protocol. *Id*. ¶ 33.

## III.    THE CRUEL EXECUTIONS BY NITROGEN HYPOXIA

At the time of filing the Complaint, Alabama had executed five individuals using the Redacted Protocol. *Id*. ¶¶ 38–56 (describing the executions of Kenneth Smith,

Alan Miller, Carey Grayson, Demetrius Frazier, and Gregory Hunt).[2] The executions of these men "all demonstrate a disturbing pattern of superadded pain and suffering prohibited by the Eighth Amendment." *Id.* ¶ 37.

Independent eyewitnesses to the executions all told the same basic story: the condemned men struggled to breathe for several minutes while shaking violently and pulling against the restraints as they suffocated and eventually expired. *See id.* ¶¶ 38–56. Each man's physical movements indicated consciousness for several minutes. *Id.* ¶ 37. Contrary to the State's statements that this would be "the most painless and humane method of execution known to man" (*id.* ¶ 35 (quotations and citation omitted)), nitrogen hypoxia under the Redacted Protocol has been proven many times over to be a painful and psychologically terrifying method of execution in the cases of Kennth Smith (*id.* ¶¶ 38–43), Alan Miller (*id.* ¶¶ 44–46), Carey

---

[2] Since filing the complaint, two more condemned men—Geoffrey West and Anthony Boyd—have been executed by nitrogen hypoxia using the Redacted Protocol. *See, e.g.*, Ralph Chapoco, *Alabama Executes Geoffrey Todd West in Fourth Execution of 2025*, ALABAMA REFLECTOR (Sept. 25, 2025), https://alabamareflector.com/2025/09/25/alabama-executes-geoffrey-todd-west-in-fourth-execution-of-2025/; *Alabama Executes Inmate with Nitrogen Gas for 1993 Murder Over $200 Drug Debt*, CBS NEWS (Oct. 23, 2025), https://www.cbsnews.com/news/alabama-execution-anthony-boyd-1993-murder-nitrogen-gas-execution/.

Grayson (*id.* ¶¶ 47–49), Demetrius Frazier (*id.* ¶¶ 50–53), and Gregory Hunt (*id.* ¶¶ 54–58).

## IV. THE REDACTED PROTOCOL LACKS NECESSARY SAFEGUARDS AND WILL LEAD TO JENKINS BEING EXECUTED IN AN UNCONSTITUTIONAL MANNER

The Redacted Protocol contains serious deficiencies that result in an infringement on Jenkins's civil and constitutional rights. For instance, the Redacted Protocol does not provide for any procedures to mitigate Jenkins's extreme panic disorder and PTSD (*id.* ¶ 67); it does not provide for a procedure if Jenkins vomits into the mask, which could result in Jenkins choking on his own vomit or seizing (*id.* ¶ 68); there is no requirement that a physician or other qualified medical professional be present (*id.* ¶¶ 69–70); the mask provided for in the Redacted Protocol will make it difficult, or impossible, for Jenkins to audibly pray during the execution (*id.* ¶¶ 71–72); and the Redacted Protocol does not allow for Jenkins's counsel to be present or to have an audio connection to monitor proceedings from an observation room (*id.* ¶¶ 74–75).

Further, unlike other methods of execution, nitrogen hypoxia requires the condemned person to become a participant in their own execution, with full knowledge that they are being forced to breathe the gas that will kill them. *Id.* ¶ 61. With each breathe they take, they know that death is increasingly imminent. Therefore, while fear is a normal aspect of every execution, it is expected to be

particularly prevalent in execution by nitrogen hypoxia. Indeed, "[e]xperts have emphasized that forced nitrogen inhalation is inhumane and can cause profound distress, even in controlled environments." *Id.* ¶ 63 (citation omitted). The condemned person will be in a state of panic and fear based on the knowledge that their body will be deprived of oxygen as they are suffocated to death. *Id.* ¶ 62.

The Complaint further provides that, as the nitrogen flows into the mask, "[t]he condemned person's heart rate will rise, they will experience the profound sensation of air hunger, and they will hyperventilate in response to lowered oxygen levels." *Id.* Additionally, as the condemned person inhales nitrogen, "the psychological effects of nitrogen hypoxia are the same as suffocation" as the body "struggle[s] for life." *Id.* ¶¶ 62–63. These risks are going to be more profound in Jenkins's case due to the childhood abuse he suffered and his resulting PTSD and panic disorder. *Id.* ¶ 64. None of these risks are speculative; rather, the risks are foreseeable and medically recognized. *Id.* ¶ 65.

## LEGAL STANDARD

A motion to dismiss "tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Grayson*, 2024 WL 4701875, at *7, *aff'd sub nom. Grayson*, 121 F.4th 894 (11th Cir. 2024) (citing and quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the court must 'take the

factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.'" *Id.* (citing and quoting *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)).

Moreover, "allegations must be accepted as true, no matter how unlikely they are. They only need be plausible." *Grayson*, 2024 WL 4701875, at *14; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announced does not require 'detailed factual allegations[.]' . . . To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as a true, to 'state a claim to relief that is plausible on its face.'") (citations omitted).

## ARGUMENT

This Court has already held on three prior occasions that challenges to execution by nitrogen hypoxia under the Redacted Protocol state plausible claims that must survive a Rule 12(b)(6) motion to dismiss. *See Smith*, 2024 WL 116303, at *10; *Grayson*, 2024 WL 4701875, at *13; *Wilson*, 2025 WL 794447, at *7. Here again, Jenkins's Complaint has alleged enough facts to "permit the court to infer more than a mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## I.  JENKINS PLEADS A PLAUSIBLE EIGHTH AMENDMENT CLAIM (CLAIM 1)

The Eighth Amendment to the U.S. Constitution grants all citizens, even those condemned to die, freedom from the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. The Eighth Amendment bars states from using "methods

[of punishment, including execution,] that are cruel and unusual," such as "punishments in which terror, pain, or disgrace [are] superadded to the penalty of death." *Bucklew* v. *Precythe*, 587 U.S. 119, 130 (2019) (internal quotations omitted); *see also In re Kemmler*, 136 U.S. 436, 447 (1890) ("[p]unishments are cruel when they involve . . . a lingering death").

"[T]he relevant Eighth Amendment inquiry is whether the State's chosen method of execution 'superadds pain well beyond what's needed to effectuate a death sentence.'" *Miller v. Hamm*, 640 F. Supp. 3d 1220, 1241 (M.D. Ala. 2022) (Huffaker, J.) (quoting *Bucklew*, 587 U.S. at 137). To plausibly allege an Eighth Amendment claim, Jenkins must first "show that the challenged method 'presents a risk that is *sure or very likely* to cause serious illness and needless suffering, and gives rise to sufficiently *imminent* dangers.'" *Smith*, 2024 WL 116303, at *9 (quoting *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1325–26 (11th Cir. 2019) (emphases in original). Second, Jenkins must "identify 'an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain and that the state has refused to adopt without a legitimate penological reason.'" *Id.* "Deciding 'whether the State has cruelly superadded pain to the punishment of death isn't something that can be accomplished by examining the State's proposed method in a vacuum, but only by compar[ing] that method with a

viable alternative.'" *Smith*, 2024 WL 116303, at *9 (quoting *Bucklew*, 587 U.S. at 136) (alterations in original).

Jenkins has alleged that execution by nitrogen hypoxia under the Redacted Protocol poses a "'substantial risk of serious harm,'" *id.*; (*see e.g.*, Compl. ¶¶ 3–4, 6, 14, 34, 37, 39, 50, 57, 60, 61, 63, 84, 86), and he has alleged two alternatives— (i) modifications to the Redacted Protocol to remedy its deficiencies or (ii) execution by firing squad (*see* Compl. ¶¶ 77–81)—that are "readily available" and would "significantly reduce a substantial risk of pain," *Miller*, 640 F. Supp. 3d at 1241 (cleaned up).

Defendants argue that this Court should dismiss Jenkins's Eighth Amendment claim through scattershot arguments, each without merit. In short, Defendants seek to minimize the obvious suffering experienced by the men Alabama has already executed with nitrogen hypoxia as alleged in the Complaint. Defendants go further and ask the Court to view the factual allegations in the light most favorable to them, which the Court cannot do. Defendants' arguments are also wrong on the law. As discussed below, this Court has already decided the same or analogous issues at the motion to dismiss stage in at least three prior challenges to the Redacted Protocol, and for the same reasons that plaintiffs' claims were allowed to proceed there, so too should Jenkins's claims.

**A.    Jenkins's Complaint Alleges Cruel and Unusual Punishment**

Jenkins must ultimately show that nitrogen hypoxia under the Redacted Protocol "'presents a risk that is *sure or very likely* to cause serious illness and needless suffering, and gives rise to sufficiently imminent dangers.'" *Smith*, 2024 WL 116303, at *9 (quoting *Price*, 920 F.3d at 1325–26). Contrary to Defendants' arguments, Jenkins meets the bar for alleging a method-of-execution claim at the pleadings stage. *Id.*

As an initial matter, Jenkins alleges that Alabama's nitrogen hypoxia protocol is akin to conscious suffocation which the Unites States Supreme Court has suggested is "constitutionally unacceptable." *Baze v. Rees*, 553 U.S. 35, 53 (2008); Compl. ¶ 84. To the extent Defendants argue that conscious suffocation under the Redacted Protocol is constitutional, Mot. at 22–23, that argument is not properly before the Court at this time as previously held by this Court. *See Grayson*, 2024 WL 4701875, at *13–14 n.12 ("To the extent that the parties disagree as to whether conscious suffocation is constitutional under *Baze*, at the motion to dismiss stage, the Court must consider whether Grayson's Amended Complaint states a claim to relief that is plausible on its face. And here, it does.").

Instead, at this stage in the proceedings, a plaintiff need only to provide "'a short and plain statement of the claim showing that [he] is entitled to relief.'" *Id.* at *7 (quoting Fed. R. Civ. P. 8(a)(2)). According to the Redacted Protocol, Jenkins

will be strapped to the gurney. The Redacted Protocol does not require that he be sedated. A mask will be put over his face, and he will be supplied with breathing air. At a signal, the valve with the breathing air will be shut off and the nitrogen gas will be turned on.   And, as Jenkins alleges, in previous nitrogen hypoxia executions, eyewitnesses have provided that the condemned person struggled to breathe and suffered from air hunger for at least several minutes after the nitrogen gas began flowing. Compl. ¶ 4; *id.* ¶ 39 n.19; *id.* ¶ 55. There is no doubt on the face of the Complaint that Jenkins will be deprived of oxygen when he is *conscious* for multiple minutes.   Therefore, Jenkins has "alleged facts beyond 'a formulaic recitation of the elements,'" and his "allegations have a sufficient basis in fact 'to raise a right to relief above the speculative level.'" *Smith*, 2024 WL 116303, at *10 (citation omitted); *see Grayson*, 2024 WL 4701875, at *12-13 (finding plausible Eighth Amendment claim that the Redacted Protocol "superadds pain because of the lack of sedation . . . which result in suffocation while conscious.").

Defendants' other arguments for dismissal of the Eighth Amendment claim are all unavailing: *First*, Defendants argue that the five consistent execution narratives should not be credited because there are other purportedly likely explanations for these consistent patterns, including "voluntary resistance" or "involuntary movements associated with dying." Mot. at 23. However, just as in *Wilson*, this Court should find that Defendants' "efforts to provide an alternative

explanation for Smith's [and other condemned persons] movements fail at this stage for the additional reason that it would require the Court to view [Jenkins's] allegations and draw inferences in the light most favorable to [Defendants], which the Court may not do." 2025 WL 794447, at *9 (citation omitted).

*Second*, Defendants assert that media eyewitnesses cannot be relied upon. Mot. at 3. But again, the Court has denied Defendants' motions to dismiss in prior challenges where the plaintiff provided "[media] witness accounts [as] evidence that [a condemned person] experienced a tortuous execution and remained conscious for much longer than had been predicted." *Wilson*, 2025 WL 794447, at *8. There is no reason on the face of the Complaint to doubt the accuracy of the media witness reports; indeed, they all relay a consistent and horrifying story.

*Third*, contrary to Defendants' argument, Jenkins's allegations of the pain and psychological distress resulting from nitrogen hypoxia are not just speculation. *See* Mot. at 24. In *Smith*, this Court found that Smith "alleged several imminent dangers," which presented the risk for, *inter alia*, an "increase [in] the time for Smith to reach a state of unconsciousness and 'would expose [him] to a severe risk of . . . the painful sensation of suffocation, i.e., superadded pain.'" 2024 WL 116303, at *9–10 (citation omitted) (Smith "alleged facts beyond 'a formulaic recitation of the elements of a cause of action,' and his allegations have a sufficient basis in fact 'to raise a right to relief above the speculative level.'") (citation omitted). Indeed, *Smith*

was decided before any human execution by nitrogen hypoxia had ever occurred, and while Jenkins's Complaint alleges similar imminent dangers (*see* Compl. ¶¶ 60–70), he has provided accounts of how these dangers have manifested (*see id.* ¶¶ 34–56).

*Fourth*, Defendants attempt to stretch the law to impose an additional burden on Jenkins—that he must allege that the "method was 'calculated to superadd terror, pain, or disgrace.'" Mot. at 21 (citing *City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520, 542 (2024)). The quoted portion from *City of Grants Pass* stems from the court's discussion of the Eighth Amendment's history in a case outside the method-of-execution context. 603 U.S. at 542. And as this Court has recognized, Defendants' third element is not a requirement that has been adopted in binding precedent. *See Grayson*, 2024 WL 4701875, at *12 n.11 ("Hamm and Raybon argue that 'Grayson's claim should fail because he does not allege that the method was *designed* to superadd pain.' This consideration has not been formally embraced in any binding Eighth Amendment law in this Circuit.") (emphasis in original).

## B. Jenkins has Properly Alleged Alternative Methods of Execution that are Readily Available

To satisfy the second threshold requirement of his Eighth Amendment claim, Jenkins has properly pleaded two alternatives—(i) modifications to the Redacted Protocol to remedy its deficiencies or (ii) execution by firing squad (*see* Compl. ¶¶ 77–81)—that are "readily available" and would "significantly reduce[] a substantial

risk of pain," *Miller*, 640 F. Supp. 3d at 1241 (quotations and citations omitted). In *Smith*, this Court found that Smith "alleged two alternative methods that he says would in fact reduce the risk of severe or superadded pain and needless suffering he avers the current Protocol is sure or very likely to cause." 2024 WL 116303, at *9 (citation omitted). Smith proposed: "(1) amending the Protocol to incorporate several changes . . . or (2) carrying out his execution by firing squad using Utah's protocol." *Id.* (citation omitted). The two alternatives this Court found sufficient in *Smith* are very similar to the two alternatives Jenkins alleges, and by alleging such, Jenkins has alleged that the State is superadding pain to the execution through nitrogen hypoxia. *See Id.*[3]

Beginning with the first alternative, modifications to the Redacted Protocol (Compl. ¶¶ 67–75, 78), Defendants assert that Jenkins's suggestions are "not feasible, readily available, and significantly safer than the current execution protocol, and ADOC has penological reasons not to adopt Jenkins's suggestions." Mot. at 33. Defendants assert that Jenkins alternatives fail because he does not (i) identify a qualified medical professional willing to participate in the execution; (ii) identify which sedative drug should be given to him; (iii) identify what sort of

---

[3] In *Smith*, the defendants did "not argue at [the motion to dismiss stage] that Smith's identification of Utah's execution protocol for the firing squad fails to identify a 'feasible, readily implemented' alternative." 2024 WL 116303, at *9. However, as explained below, the Supreme Court has dealt with the same in *Nance v. Ward*, 597 U.S. 159 (2022).

training would be necessary to competently secure a full-face respirator. Mot. at 33–35. Defendants are wrong on all counts.

*First*, Jenkins provides sufficient detail to allow the State to implement the modifications to the Redacted Protocol he identifies in his Complaint (Compl. ¶ 78). The level of identification and detail Defendants seek is not required at the motion to dismiss stage. Indeed, this Court held this level of detail was not required when it found that the plaintiff in *Smith* "alleged two feasible, readily implemented alternative methods." 2024 WL 116303, at *10; *compare* Compl., *Smith v. Hamm*, Case No. 2:23-cv-00656-RAH, ECF 31 ¶ 102, *with* Compl. ¶ 78. Moreover, the Court in *Wilson* rejected a similar argument where defendants argued that the state could not implement a method of execution that would require the involvement of a similar medical professional. *See Wilson*, 2025 WL 794447, at *9 ("Hamm's next argument is that . . . '[a] state has a legitimate reason not to implement any method of execution that would require the involvement of persons whose professional ethics rules or traditions impede their participation.' . . . The Court finds this argument unavailing at this stage.") (citation omitted).

*Second*, Jenkins alleges that each of these adjustments would reduce the risk of superadded pain. For instance, providing anti-nausea medication (Compl. ¶ 78(a)), would lower the risk of Jenkins vomiting into his mask (*id.* ¶ 68); providing for a licensed physician or other medical professional to be present (*id.* ¶ 78(c)),

would reduce the risk that Jenkins experience more psychological distress (*id.* ¶ 70). Just as the modifications were sufficiently alleged in *Smith*, so too are they sufficiently alleged here.

The second alternative that Jenkins proposes is the firing squad. *Id.* ¶ 79. Both Utah and South Carolina have the firing squad as an available execution method. *Id.* Therefore, Alabama would not be "experiment[ing]" with a new method (Mot. at 32, 34), like it did when it was the first state to use execution by nitrogen hypoxia. Moreover, the alternative does not need to be one that is presently authorized by the State of Alabama. *See Bucklew*, 587 U.S. at 139–40 (a condemned person "seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law").

Defendants attempt to dispense with Jenkins's firing squad alternative by asserting that he failed to provide the State with a "blueprint." Mot. at 36. However, the State is again attempting to impose a higher pleading bar on Jenkins than what is required.  Jenkins does not need to provide the State with a detailed "blueprint" on how to execute him. Jenkins only needs to provide the State with a "factually plausible" alternative." *Grayson v. Dunn*, 156 F. Supp. 3d 1340, 1358 (M.D. Ala. 2015) ("the alternative pleaded must be, in *Twombly/Iqbal* vernacular, factually plausible").

Even if Jenkins were required at the pleading stage to provide the State with the type of "blueprint" that Defendants envision, he has done this under the standard Defendants cite from *Nance v. Ward*. There, the Court provided that plaintiff must provide a path forward so "that the State really can put him to death, though in a different way than it plans." *Nance*, 597 U.S. 159, 169 (2022) (citations omitted). In *Nance*, the plaintiff also alleged the firing squad as an alternative and directed the Court to Utah's firing squad protocol, just as Jenkins has done. *Id.* The Court in *Nance* held that the plaintiff met the pleading standard for his method-of-execution claim, and here, Jenkins's complaint provides even more detail regarding Utah's firing squad protocol. *Compare* Compl. *Nance v. Ward*, Case No. 1:20-cv-00107-JPB, ECF 1 ¶ 103, *with* Compl. ¶ 80.

To the extent that Defendants argue firing squad is not readily available because it would "require the development of a protocol, the construction of any necessary infrastructure, and training of execution personnel" (Mot. at 36), these arguments fail. By alleging the firing squad as an alternative, Jenkins is still providing the State with a "pathway forward" to execute him. *See Nance*, 597 U.S. at 169–70 ("[W]e hold today, even if the alternative route necessitates a change in state law[,] Nance's requested relief still places his execution in Georgia's control. Assuming it wants to carry out the death sentence, the State can enact legislation approving what a court has found to be a fairly easy-to-employ method of

execution."); *see also Grayson*, 2024 WL 4701875, at *12–13 (finding two alternatives plausible, neither of which had been adopted in any state).

After execution by firing squad becomes an approved method, Alabama has the processes to develop a protocol, construct necessary infrastructure, and train execution personnel—just as it has done in the past for other new methods of execution in the State. The approval process can happen beginning with the legislature because "Alabama's statute, in addition to listing alternatives, provides for execution 'by any constitutional method.'" *Nance*, 597 U.S. at 173 (citing Ala. Code. § 15-18-82.1(c)). Therefore, simply because Alabama does not yet have the infrastructure or processes to execute condemned persons by firing squad, does not mean it is not a readily available alternative method. *Id.* at 173 ("the [*Bucklew*] Court . . . told inmates they could identify an alternative method of execution not 'presently authorized' by the executing State's law. . . .  That option would ensure state law does not 'control[ ]' the Eighth Amendment inquiry; and it would keep manageable the inmate's "burden" to identify an alternative.") (citation omitted).

Furthermore, Jenkins properly alleges that execution by firing squad "involve[s] a lesser risk of pain than the significant superadded pain [he] will endure under the Redacted Protocol." Compl. ¶ 81. This is largely because execution by firing squad is "'pretty instantaneous'" (*id.* (citation omitted)), as compared to execution by nitrogen hypoxia. Once the nitrogen begins flowing, it takes

approximately 20 to 30 minutes for the condemned person to be pronounced dead. *Id.* ¶¶ 43, 46, 49, 53, 56. Given the instantaneous nature of the firing squad, it is less psychologically distressing than being strapped to a gurney and struggling to breathe for several minutes. *See id.* ¶¶ 4, 37, 45, 48, 51.

Jenkins's identified alternatives are readily available and provide the State with a pathway to forward to execute him that "significantly reduce[] a substantial risk of pain." *Miller*, 640 F. Supp. 3d at 1241 (quotations and citation omitted).

## II.   JENKINS PLEADS A PLAUSIBLE AS-APPLIED EIGHTH AMENDMENT CLAIM (CLAIM 2)

For the reasons stated above, Jenkins has properly alleged that the Redacted Protocol results in superadded pain during an execution. *See Wilson*, 2025 WL 794447, at *7 ("Wilson asserts both a facial challenge and an as-applied challenge to the Protocol. As the Supreme Court has explained, 'the substantive rule of law necessary to establish a constitutional violation' is the same for both.") (quoting *Bucklew*, 587 U.S. at 138). These effects will be even more profound for Jenkins, whose history of childhood abuse and diagnosed trauma will make execution by nitrogen hypoxia under the Redacted Protocol more torturous. Compl. ¶¶ 11–14, 67, 70, 72, 92–93.

Defendants' attempt to invalidate Jenkins's claim by asserting that his allegations of childhood abuse are not credible. *See* Mot. at 26–29. However, this argument is improper at the motion to dismiss stage. At this point in the pleadings,

23

all of Jenkins's well-pleaded allegations regarding his mental health and childhood trauma must be taken as true. *Greene v. Ala. Dep't of Revenue*, 2017 WL 4236562, at *1 (M.D. Ala. Sept. 25, 2017) ("In ruling on a motion to dismiss, courts must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.") (quotations and citation omitted); *Grayson*, 2024 WL 4701875, at *14 ("[Jenkins's] allegations must be accepted as true, no matter how unlikely they are. They only need be plausible."). Further, the Alabama attorney general has "concede[d]" that Jenkins "had a horrible childhood," and a federal court in the Northern District of Alabama found it "indisputable that Jenkins had a horrible childhood in which he was seriously abused, ignored, and mistreated by his parents." Compl. ¶ 13.

Additionally, Defendants assert that Jenkins's as-applied claim fails because Jenkins allegedly does not "explain how the hypoxia protocol is ***sure or very likely*** to trigger a panic attack, much less vomiting or asphyxiation." Mot. at 31 (emphasis in original). Jenkins has met his burden at the motion to dismiss stage. As an initial matter, to argue that Jenkins does not meet this standard, Defendants cite from the *Smith* opinion that was evaluating Smith's preliminary injunction motion, not the defendants' motion to dismiss. Mot. at 31 n.6 (quoting *Smith*, 2024 WL 116303, at *19). Because the case Defendants rely upon "reviewed the condemned inmate's Eighth Amendment claim under [a] preliminary injunction standard . . . , the

Defendants' cited authority offers little in support of their argument that [Jenkins] has failed to state a plausible Eighth Amendment claim under a Rule 12(b)(6) attack." *Smith*, 2024 WL 116303, at *9.

At this stage, accepting Jenkins's well-pleaded factual allegations as true, the Court must accept that Jenkins has diagnosed PTSD and panic disorder that "result in acute attacks of anxiety, with physical symptoms such as hyperventilating, hysterical crying, coughing, and heaving. Because it evokes his childhood abuse, placing a mask over Jenkins's face is highly likely to induce acute panic symptoms." Compl. ¶ 6. Contrary to Defendants' assertion, he has also alleged "a history of panic attacks." Mot. at 29; Compl. ¶14 ("Jenkins has been diagnosed with panic disorder stemming from this childhood trauma, which manifests in regular and severe anxiety attacks. During these attacks, Jenkins's psychological distress is expressed in physical symptoms. In the beginning of an attack, Jenkins's vision begins flickering, he feels pain on the back of his knees, he develops cramps in his stomach, and he collapses into a ball[.] . . . During his panic attacks, Jenkins uncontrollably cries, coughs, heaves, and hyperventilates, losing the ability to speak. Jenkins is highly likely to suffer a similar debilitating attack at his time of execution . . . .").

Rather than basing his claim on "speculation," Jenkins has alleged that the first five nitrogen hypoxia executions in Alabama have resulted in "psychological distress," (Compl. ¶ 57), and that "[e]xperts have emphasized that forced nitrogen

inhalation is inhumane and can cause profound distress, even in controlled environments." *Id.* ¶ 63 (citing Bickler, P.E. & Lipnick, M.S., *Evidence Against Use of Nitrogen for the Death Penalty*, 331 JAMA 2075 (2024)). Jenkins has alleged that the psychological distress will be much more severe given his particular forms of childhood abuse and trauma. *Id.* ¶¶ 64–65 ("Nitrogen hypoxia under the Redacted Protocol will be particularly horrific for Jenkins given that this method evokes the horrors he suffered as a child. These risks are not speculative; they are foreseeable and medically recognized.").

Jenkins also has alleged, contrary to Defendants' assertion (*see* Mot. at 30), that nitrogen hypoxia administered under the Redacted Protocol is more psychologically distressing than other methods of execution. Indeed, Jenkins provides that "[u]nlike other methods of execution where the condemned person is powerless against the entry of the lethal device . . ., nitrogen hypoxia requires the condemned person to take the breaths of nitrogen gas with full knowledge that those breaths will eventually kill him." Compl. ¶ 61; *see id.* ¶ 62.

Again, at this stage, Jenkins "need not prove his case on the pleadings—his [] Complaint must merely provide enough factual material to raise a reasonable inference, and thus a plausible claim." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010). The allegations in the Complaint more than allow the Court to "reasonabl[y]

infer[]" that, at the least, nitrogen hypoxia under the Redacted Protocol is "very likely" to cause Jenkins "needless suffering," *Smith*, 2024 WL 116303, at *9 (citation omitted) due to his diagnosed PTSD and panic disorder stemming from his significant childhood abuse.

## III.    JENKINS PLEADS A PLAUSIBLE SIXTH AMENDMENT CLAIM (CLAIM 3)

In their Motion, Defendants cite *Mills v. Hamm*, 102 F.4th 1245 (11th Cir. 2024), in which the Eleventh Circuit "found that Mills was unlikely to succeed on [the merits of] a due process claim for access to counsel during his execution…." Mot. at 38. Whether Jenkins is ultimately able to persuade the Court that the Redacted Protocol's failure to allow counsel to observe—either by permitting their presence in the execution chamber or by providing audio of—the execution violates Jenkins's Sixth Amendment right is not the question at this stage.[4]  All the Complaint must do is plead that Jenkins has a right to counsel and facts sufficient to show that

---

[4] While Jenkins need not prove his claims in response to the Motion to Dismiss, it is clear that denying Jenkins the right to have his counsel observe, or even hear, the execution denies him the ability to enforce all other legal rights that might be violated leading up to or during the execution. The Complaint includes specific allegations regarding the infringement of Jenkins's rights threatened by the Redacted Protocol.  Jenkins's ability to enforce those Constitutional rights are all but extinguished by the Redacted Protocol's infringement on Jenkins's right to counsel.

this right is violated.   The Complaint adequately does both.  Jenkins has a right to counsel at "all critical stages of the criminal proceedings." *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citations and quotations omitted).  In Defendant Hamm's own words, ADOC is "carrying out the ultimate punishment, the execution of an inmate." *See* Kim Chandler, *Alabama Says Delay in Execution Caused by IV Line Issue*, ASSOCIATED PRESS (July 29, 2022), https://apnews.com/article/alabama-executions-government-and-politics-b07f771292d84f77e60550f40bab9d80        (quotations omitted). The stage at which the State intends to end a citizen's life is "critical" by any definition of the word.

The Motion goes on to proffer two non sequiturs: (1) that Jenkins failed to plead that his counsel lacks sufficient expertise in full-face respirators, and (2) that ADOC has a legitimate security interest in keeping counsel out of the chamber and in prohibiting any audio transmission to the witness room.  Mot. at 38–39.  First, Defendants' suggestion that Jenkins must plead some greater detail about his counsel's ability to spot failures in the protocol sets up a catch-22 no litigant can survive—one in which ADOC refuses to provide details regarding its execution protocol, then turns around and claims the protocol cannot be challenged because the challenge lacks sufficient detail to survive dismissal.  Second, the Motion's unsupported reference to a "legitimate security interest," (Mot. at 35), has no place in an argument about Jenkins's right to counsel at the motion to dismiss stage. Even

if this purported concern might be relevant to a subsequent motion for summary judgment—and even if Defendants had offered any evidence supporting this alleged security interest—it has no bearing on the sufficiency of the Complaint and therefore no relevance at this point in the litigation.

## IV.    JENKINS PLEADS PLAUSIBLE FREE EXERCISE AND RLUIPA CLAIMS (CLAIMS 4 & 5)

In Count IV, Jenkins alleges that as a long-time practicing Christian, he intends to pray audibly during his execution to help calm the onset of a panic attack. Compl. ¶ 103. The Redacted Protocol violates Jenkins's First Amendment free exercise rights by prohibiting his spiritual advisor from being by his side to pray audibly before his death, and by requiring that a mask over his head prevent him from praying out loud. *Id.*¶¶ 103–06. In Count V, Jenkins alleges the same under RLUIPA. *Id.* ¶¶ 109–13. Defendants consider Counts IV and V together (Mot. at 44), and argue that Jenkins's claims should be dismissed because (i) spiritual advisors have been present with condemned persons in the execution room and prayed audibly with them, and in the last executions, there was no evidence that the mask became dislodged by speaking or moving; (ii) spiritual advisors can be present before the nitrogen begins flowing; and (iii) Jenkins's claim that his desired spiritual advisor will decline to be present due to fear of the nitrogen gas is "speculation." Mot. at 44–46.

This Court should deny Defendants' Motion on these two counts, just as this Court did in *Smith*, 2024 WL 116303, at *14–15. Jenkins alleges that he "plans to audibly pray with his spiritual advisor at the time of his execution; however, the mask over his head will prevent [this]." Compl. ¶ 103, 111–12 ("The Redacted Protocol further substantially burdens Jenkins's religious exercise to pray audibly by preventing him from speaking and praying, lest he face the dangerous consequences of dislodging the mask while praying."). Defendants argue that "[t]he claim that Jenkins will be unable to pray audibly with his spiritual advisor does not rise above speculation." Mot. at 46. However, Jenkins's allegations are similar to the ones in *Smith*. There, this Court found that Smith stated a plausible claim that the Redacted Protocol substantially burdened his religious exercise under RLUIPA where Smith alleged that being masked "'*may* prevent [his] prayers from being audible.'" *Smith*, 2024 WL 116303, at *15 (emphasis added) (alteration in original) (citation omitted).

Jenkins also alleges that the Redacted Protocol will unconstitutionally restrict his free exercise of religion because his spiritual advisor will be prevented "from being at his side in the time before his death to pray audibly with him and provide him comfort." Compl. ¶ 105. Indeed, Defendants do not deny that Jenkins's spiritual advisor will not be able to be by his side when the nitrogen is flowing. Mot. at 46. This will be the most distressing time because, as prior accounts have shown, Jenkins

will be conscious for *several* minutes while the nitrogen is flowing into the mask. Compl. ¶¶ 4, 39 n.19, 55, 61.

### A.    Jenkins's RLUIPA Claim (Claim 5)

Beginning with the RLUIPA claim, "[t]o survive a motion to dismiss a claim that a prison policy violates RLUIPA, [Jenkins] must plead that audible prayer is an exercise of his sincere religious beliefs and that the [Redacted] Protocol substantially burdens his ability to audibly pray." *Smith*, 2024 WL 116303, at *14 (citations omitted). Jenkins has alleged both essential factors in the (i) exercise of his religious beliefs through prayer and (ii) the substantial burdens on that exercise.

*First*, as the Complaint alleges, and as this Court has found, "[a]udible prayer is an exercise of [the Christian] faith." *Id*. Appropriately, Defendants do not challenge that prayer is a component of Jenkins's sincerely held religious beliefs. Mot. at 44. In fact, previously, the Court "struggle[d] to conceive of a practice more central to religious exercise than audible prayer." *Smith*, 2024 WL 116303, at *14. Praying with another during one's execution is especially common. *Id.* (quoting *Ramirez v. Collier*, 595 U.S. 411, 425, 427 (2022)) ("'there is a rich history of clerical prayer at the time of a prisoner's execution, dating back well before the founding of our Nation'"). Jenkins has thus "pled sufficient facts to state a plausible claim under the first prong of the RLUIPA analysis." *Smith*, 2024 WL 116303, at *14.

*Second*, Jenkins has also stated a plausible claim that the Redacted Protocol substantially burdens his religious exercise under RLUIPA. Jenkins alleges that he "plans to audibly pray with his spiritual advisor at the time of his execution; however, the mask over his head will prevent [this]." Compl. ¶¶ 103, 111–12 (Jenkins "will be masked as soon as he enters the execution chamber, which may prevent Jenkins's prayers from being audible. The Redacted Protocol further substantially burdens Jenkins's religious exercise to pray audibly by preventing him from speaking and praying, lest he face the dangerous consequences of dislodging the mask while praying."). In addition, the Acknowledgment Form provides that Jenkins's spiritual advisor must remain at least three feet away from him while nitrogen is flowing, which further burdens his ability to pray and may result in a spiritual advisor concluding that their own health and safety concerns prevent them from being in the room at all. *See id.*¶ 113, Ex. 3.

In the face of Jenkins's well-pleaded allegations, Defendants rely on facts outside of the scope of the Complaint, i.e., that spiritual advisors were apparently present during the executions of Kenneth Smith, Alan Miller, Carey Grayson, and Geoffrey West. Mot. at 44–45. But the mere unalleged facts that spiritual advisors were present says nothing about the mask's restriction of audible prayer or about the risk that the mask could become dislodged such that air would enter the mask and further prolong the execution. And the fact that other spiritual advisors braved the

execution chamber does not respond to Jenkins's well-pleaded concern that the potential risk to the spiritual advisor could leave him without one in this case. *See* Compl. ¶¶ 113–114. Indeed, the pleading burden under RLUIPA is far lower than Defendants suggest. In *Smith*, this Court found that Smith stated a plausible claim that the Redacted Protocol substantially burdened his religious exercise under RLUIPA where Smith alleged that being masked "'*may* prevent [his] prayers from being audible.'" *Smith*, 2024 WL 116303, at *15 (emphasis added) (alteration in original) (citation omitted).

Therefore, this Court should deny Defendants' Motion as it relates to Jenkins's RLUIPA claim.

### B.    Jenkins's Free Exercise Claim (Claim 4)

"If a claim fails under RLUIPA—which embeds a heightened standard for government restrictions of the free exercise of religion—it necessarily fails under the First Amendment." *Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022). Because Jenkins has plausibly pled a RLUIPA claim, it necessarily follows that he has also pled a plausible First Amendment Free Exercise claim. This Court concluded the same in Smith's prior challenge. *Smith*, 2024 WL 116303, at *15.

Even if this Court were to find that Jenkins has not properly pled a First Amendment violation based on his RLUIPA allegations, Jenkins's First Amendment claim should move forward on independent grounds. "[F]ederal courts must take

cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citation omitted). The standard for assessing such claims is that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. Defendants agree that courts will consider the following factors:

> (1) whether there is a valid, rational connection between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remains open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an exaggerated response to prison concerns.

*Hakim v. Hicks*, 223 F.3d 1244, 1247-48 (11th Cir. 2000) (cleaned up).

Here, Jenkins alleges that he "plans to audibly pray with his spiritual advisor at the time of his execution; however, the mask over his head will prevent his ability to practice his free exercise of religion." Compl. ¶ 103. At this stage, Jenkins's free exercise claim is plausible and should move forward. At later stages, discovery may focus on *inter alia*, whether the State will leave open alternative means, and what effect Jenkins's free exercise will impact prison staff and inmates.

## V.    JENKINS PLEADS A PLAUSIBLE FOURTEENTH AMENDMENT CLAIM (CLAIM 6)

The Fourteenth Amendment forbids the State of Alabama from "depriv[ing] any person of life, liberty, or property without due process of law …." U.S. CONST. amend. XIV, § 1. Here, Jenkins has a liberty interest in bringing an Eighth Amendment challenge to Alabama's nitrogen hypoxia execution protocol. And Defendants' refusal to provide Jenkins with an unredacted version of the protocol violates his due process rights under the Fourteenth Amendment as he attempts to vindicate that liberty interest. Defendants' conclusory assertion that the full protocol may not be provided "for security purposes" is not a valid ground for dismissal of Jenkins' well-pled claim that he is entitled to know, in greater detail, whether Alabama will violate his Eighth Amendment rights when it executes him. Mot. at 48.

To be clear, the parties are engaged in ongoing negotiations regarding the potential production of the unredacted nitrogen hypoxia protocol, subject to entry by this Court of an agreed-upon protective order.  No agreement with respect to the production of the unredacted protocol or a protective order has yet been reached. In the event such agreement is reached, Mr. Jenkins will promptly inform the Court of his position regarding any impact that agreement has on his Fourteenth Amendment claim.

To state a claim for a violation of the Fourteenth Amendment right to procedural due process, Mr. Jenkins must allege "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Woods* v. *Comm'r, Ala. Dep't of Corr.*, 951 F.3d 1288, 1293 (11th Cir. 2020) (quotations and citation omitted). Jenkins has alleged a liberty interest in vindicating his Eighth Amendment right to be free from cruel or unusual punishment. Compl. ¶ 116–120. The State of Alabama has proposed to execute Jenkins pursuant to a protocol he is largely not permitted to examine, thus depriving him of adequate procedural opportunities to challenge their planned action.

As an initial matter, it is well-settled law that there is a liberty interest in being executed in a manner that does not violate Eighth Amendment rights through imposing death with superadded pain. Several federal courts have recognized that the Eighth Amendment creates a liberty interest that may be impinged by deviations from an execution protocol. *See Arthur v. Thomas*, 674 F.3d 1257, 1263 (11th Cir. 2012) (*per curiam*) ("Significant deviations from a protocol that protects inmates from cruel and unusual punishment can violate the Eighth Amendment.") (citations omitted); *see also Cooey v. Kasich*, 801 F. Supp. 2d 623, 653–54 (S.D. Ohio 2011) (explaining that core deviations in protocol burden inmate's fundamental right to be free from cruel and unusual punishment); *Hoffman. v. Jindal*, 2014 WL 130981, at

*5 (M.D. La. Jan. 10, 2014) (finding plausible Equal Protection claim due to alleged substantial deviations from execution protocol). Of course, in order to know whether there have been deviations from a particular protocol, the condemned person must first have full access to a complete and unredacted protocol.

In the present case, Jenkins has alleged sufficient facts to state a plausible claim that his Fourteenth Amendment due process rights have been violated by the State's secrecy in providing only a Redacted Procol. Jenkins' Fourteenth Amendment claim must survive Defendants' Motion for two reasons.

*First*, Jenkins has alleged sufficient facts to substantiate his allegation that Alabama's current nitrogen hypoxia protocol may cause him to be executed in a cruel and unusual way. As noted in the Complaint, in the five years since the ADOC announced that it was preparing a nitrogen hypoxia protocol, the ADOC has not provided *any* public information or sought *any* public input pertaining to the protocol. Compl. ¶ 117. Defendants' unsupported contentions that the State has crafted a protocol for a novel method of execution that it can carry out without violating the Eighth Amendment should not be credited. *See Hoffman*, 2014 WL 130981, at *5 (crediting plaintiffs' argument that "[d]efendants' past practices suggest that they will not be executed in a uniform and equal way which also violates the Equal Protection Clause of the Fourteenth Amendment"). Eyewitnesses to the previous executions Alabama carried out pursuant to the nitrogen hypoxia protocol

have reported signs of physical and mental anguish exhibited by each condemned inmate. *See* Compl. ¶¶ 38–58. Accepting these allegations as true, Jenkins has pled more than sufficient factual support for his claim that the unredacted nitrogen hypoxia protocol may violate his Eighth Amendment liberty interest. *Iqbal*, 556 U.S. at 678.

*Second*, Jenkins being permitted to examine the unredacted nitrogen hypoxia protocol is necessary to vindicate that interest. While at least one court of this District has previously stated that "death row inmates do not possess a cognizable liberty interest in obtaining the details of a given execution protocol," *Woods v. Dunn*, 2020 WL 1015763, at *13 (M.D. Ala. Mar. 2, 2020), this conclusion rests on an overbroad reading of the Eleventh Circuit's opinion in *Jones v. Commissioner, Georgia Department of Corrections*, 811 F.3d 1288 (11th Cir. 2016). In *Jones*, the court rejected a Fourteenth Amendment argument specifically because it was "untethered" from an Eighth Amendment claim whose dismissal by the trial court plaintiff had declined to appeal. *Id.* at 1294–95. *Jones* did *not* hold that condemned individuals lack a due process right to examine the protocol pursuant to which they will be killed; it merely held that "a *stand-alone claim*" that a State "infringe[d] his ability to discover grievances, and to litigate effectively once in court" could not implicate such a right. *Id.* (emphasis added) (internal quotations omitted).

The cases Defendants cite in their Motion (including *Jones)* are also procedurally inapposite—each was decided in a very different emergency posture with the inmate's execution imminently pending. In *Woods*, the lawsuit did not concern the content of an execution protocol, but the fact that the State had not yet developed an execution protocol for nitrogen hypoxia at the time the plaintiff opted not to elect that method of execution, as here. *Woods*, 2020 WL 1015763, at *12. And in *Sepulvado*, the new lethal injection protocol the state refused to provide concerned a revised one-drug (pentobartibal) procedure, *Sepulvado v. Jindal*, 729 F.3d 413, 416 (5th Cir. 2013), which other states had already used in previous executions.

To justify their refusal to grant access to the unredacted protocol, Defendants offer only a vague justification that "[t]he protocol is redacted for security purposes." Mot. at 48. This rationale strains credulity when one compares the heavily redacted Nitrogen Hypoxia Protocol with Alabama's lightly redacted lethal injection protocol. The lethal injection protocol has *very few* redactions (eight—many of which appear to relate to the particular identity of individuals involved during a lethal injection execution),[5] while the Nitrogen Hypoxia Protocol has *extensive*

---

[5] *See* ECF 1-1, Lethal Injection Protocol § X(B)(iv)–(v), App'x B § II.

redactions (around 150—in many cases redacting entire paragraphs).[6]  The State's lethal injection protocol leaves unredacted detailed information about the dosages of the drugs involved, how they are prepared, and how they are administered, as well as specifics about safety procedures, such as consciousness checks. ECF 1-1, Lethal Injection Protocol, App'x B § I; *id.* §§ X(B)(v). The redacted Nitrogen Hypoxia Protocol, in contrast, does not provide comparably detailed information about the

---

[6] For example, Section IV on "Miscellaneous Information & Procedures" is almost entirely redacted, such that it is not discernible what procedures the execution team employs to turn off oxygen monitors, even though they are purportedly "an important safety feature" that "are very likely to alarm" when placed in certain positions. ECF 1-1, Lethal Injection Protocol, § IV. Other redactions in the Protocol are so extensive that the context does not even provide clues as to what information is being hidden from Mr. Jenkins.  *See, e.g.*, *id.* ¶ 60 ("[REDACTION] verify the following:  a. [REDACTION], b. [REDACTION], c. [REDACTION], d. [REDACTION]."); *id.* ¶ 61 (entirely redacted).

purity of nitrogen gas to use,[7] how the machinery is tested and inspected,[8] and how it is to be administered during an execution.[9] This information—necessary to plan for and carry out nitrogen gas asphyxiation executions—is apparently redacted. To the extent Alabama has thought to include such information at all, Jenkins, his counsel, and the public have no way of knowing. The redactions Defendants argue were made for "security purposes" include extensive redactions to sections regarding

---

[7] *Compare, e.g.*, ECF 1-1, Nitrogen Hypoxia Protocol, App'x C, Section III (redacting full paragraph on "minimum acceptable supply thresholds for each breathing gas"), *with* ECF 1-1, Lethal Injection Protocol, § X(B)(v)(b) (describing in detail the components and dosages of the lethal injection drugs); *id.*, App'x B, Section I (providing detailed information about the syringe preparation and lethal injection drugs).

[8] *See, e.g.*, ECF 1-1, Nitrogen Hypoxia Protocol, App'x C, Section I (redacting most of the information about the calibration of the oxygen monitoring equipment); *id.*, App'x C, Section II ¶ 25 ("[REDACTION] verify that nitrogen gas and breathing air are present [REDACTION] by inspecting the pressure gauges [REDACTION]. Verify that the line pressure indicated by each pressure gauge is consistent with [REDACTION] the gas manifolds.").

[9] *Compare* ECF 1-1, Nitrogen Hypoxia Protocol, App'x C, Section II (redacting most of the information on the operation of the nitrogen hypoxia system, including information on initialization, pressurization, movement of the gases, and pre-execution inspections), *with* ECF 1-1, Lethal Injection Protocol, App'x B, Section II (providing almost entirely unredacted instructions on the administration of the drugs); *id.* § X(B)(v)(b).

"Operation of the Nitrogen Hypoxia System," "Pressurizing Breathing Air Banks," "Pressurizing Nitrogen Gas Banks," "Movement of Breathing Gases," "Final System Preparations," "Procedures for Pre-Execution Inspections Required by ADOC Protocol," "System Shutdown Procedures," "Minimum Acceptable Thresholds," and "Miscellaneous Information & Procedures."  ECF 1-1, Nitrogen Hypoxia Protocol, App'x C, Sections I–IV.  The extent and location of the redactions, and the disparate treatment of redactions in the Nitrogen Hypoxia Protocol, as compared to analogous information in the lethal injection protocol, calls into question whether the redactions are actually necessary for "security."  The Fourteenth Amendment grants Jenkins notice and an opportunity to be heard as he attempts to vindicate his Eighth Amendment rights. The State should not be permitted to stop him by dressing its strategic preference for secrecy in the garb of a genuine security interest.

Even setting aside the foregoing, Defendants' arguments on this issue are fact-intensive and thus inappropriate at the motion-to-dismiss stage. Jenkins has alleged that Defendants have failed to disclose sufficient details regarding his execution by nitrogen hypoxia, thus preventing him from making a full and informed determination which aspects of his execution may constitute Eighth Amendment violations. Compl. ¶ 118; *cf. Gissendaner* v. *Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1283 (11th Cir. 2015) (reasoning that the details of an execution protocol, in

this case "the source of the drug and the qualifications of the officials administering it," are relevant where a plaintiff has made a "plausible allegation of a feasible and more humane alternative," as Jenkins as done here) (quotations and citations omitted). He has satisfied the pleading requirement with respect to his Fourteenth Amendment claim, and accordingly the Court should deny Defendants' Motion with respect to this claim.

## CONCLUSION

For all of the reasons provided above, Defendants' Motion to Dismiss (ECF No. 19) is properly denied in its entirety. To the extent that the Motion to Dismiss is granted in any part, the Court should grant Plaintiff Jenkins leave to amend.

Dated: October 27, 2025          Respectfully submitted,

*/s/ Joshua Toll*
_____

J. Andrew Pratt (AL Bar No. ASB-3507-J)
Joshua Toll (D.C. Bar No. 463073) (*pro hac vice*)
Kathryn Lehman (Florida State Bar No. 0095642) (pro *hac vice*)
Samuel R. Diamant (California State Bar No. 288738) (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4600
Email: *apratt@kslaw.com*
       *jtoll@kslaw.com*
       *klehman@kslaw.com*
       *sdiamant@kslaw.com*