# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| MARK JENKINS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:25-cv-00676-ECM |
| JOHN Q. HAMM, Commissioner, Alabama Department of Corrections, | ) |
| TERRY RAYBON, Warden, Holman Correctional Facility, | ) |
| and | ) |
| JOHN DOES 1-10, | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Steve Marshall
*Attorney General*

Polly S. Kenny
*Assistant Attorney General*

Lauren A. Simpson
*Deputy Attorney General*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
(334) 242-7300
Lauren.Simpson@AlabamaAG.gov

November 7, 2025

In accordance with this Court's order, DE20, Defendants briefly respond to Plaintiff's opposition to Defendants' motion to dismiss, DE21. While Defendants stand by their motion to dismiss, DE19, incorporate it by reference, and will not waste the Court's time by reiterating those arguments, Defendants address a few points in Plaintiff's response as to his Eighth, Sixth, and Fourteenth Amendment claims.

## I.     Eighth Amendment

### A.     General matters

Plaintiff's case for harm allegedly caused during the prior nitrogen hypoxia executions is largely based on the reports of lay witnesses, and Plaintiff takes issue with Defendants pointing out that those witnesses' observations are more likely explained as the effects of a body dying rather than as evidence of conscious suffocation. *See, e.g.*, DE21:21. But in a civil complaint, the allegations must be more than "speculative," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and they must raise "more than a sheer possibility" of unlawful action, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There is a "line between possibility and plausibility," and "facts that are merely consistent with a defendant's liability…stop[] short." *Id.* (citation modified). Plaintiff pleads no facts showing that any of the witnesses on whose accounts they rely possessed an understanding of how hypoxic deaths work (or any death without the use of a paralytic), familiarity with the phenomenon of agonal

1

breathing, or actual knowledge of the inmates' consciousness when they were exhibiting movement or "gasping." While Plaintiff may argue it is *possible* that the State has tortured its hypoxia-electing inmates to death, what is far more *plausible* is that the patterns seen at the previous seven hypoxia executions—including synchronous leg lifting—are indicative of unconscious movement from dying bodies.

### B. Alternatives

#### i. Modified hypoxia protocol

***Medical professional*:** Plaintiff takes issue with Defendants' statement that Plaintiff has failed to identify a qualified medical professional willing and able to participate in his execution. DE21:24. It is well established that medical ethics prohibit physician participation in executions by any method. *E.g.*, Opinion 9.7.3, AMA CODE OF MED. ETHICS, https://code-medical-ethics.ama-assn.org/ethics-opinions/capital-punishment (last visited Oct. 30, 2025). It is not enough, considering the factual landscape, to simply allege that ADOC should have a doctor on site to supervise an execution—Plaintiff needs to identify any such hypothetical physician willing and able to fill this role.

***Drugs*:** Plaintiff also takes issue with Defendants' assertion that he must identify which sedative drugs should be given to him. DE21:24. The Supreme Court has stated that an inmate must provide "the State a pathway forward," such as "a veritable blueprint for carrying the death sentence out." *Nance v. Ward*, 597 U.S. 159, 169

2

(2022). As Plaintiff has failed to identify the drugs he believes would be constitutional (and how they would be available to ADOC for use in an execution), he has failed to satisfy *Nance*. While Plaintiff alleges that he need not provide Defendants with a "blueprint," DE21:26, *Nance* says otherwise.

Moreover, given the history of lethal drugs used in execution—including one drug being pulled entirely from the American market, *Glossip v. Gross*, 576 U.S. 863, 869–71 (2015)—ADOC has a legitimate penological reason to reject any method of execution involving a controlled substance, which could permit private entities to take the decision to impose capital punishment away from the people. *See, e.g.*, *Boyd v. Hamm*, 2:25-cv-00529, 2025 WL 2884410, at *23 (M.D. Ala. Oct. 9, 2025) (discussing MAID and citing *Glossip*); *Frazier v. Hamm*, 2:24-cv-00732, 2025 WL 361172, at *13–14 (M.D. Ala. Jan. 31, 2025) (discussing midazolam-hypoxia hybrid protocol and citing *Glossip*).

***Training*:** Plaintiff is the party who has a problem with the training the member of the execution team receives as to placement of the full-face respirator. To satisfy his burden, he must specify the "comprehensive training" that individual should receive—he cannot simply leave it up to ADOC to guess what training would satisfy him. *See* DE21:24-25.

      **ii.    Firing squad**

Plaintiff notes that in *Boyd*, 2025 WL 2884410, firing squad was found to be available to ADOC. For the reasons set forth in their motion to dismiss, DE19:39-40, Defendants respectfully disagree with that finding. Firing squad is not "readily available" where adopting it would require the construction of a new facility, the review and adoption of a protocol, and the training of execution personnel, not to tighten a strap or flip a switch, but rather to shoot a man in the chest with heightened accuracy.

***

Even if the Court determines that Plaintiff has plausibly pleaded *an* alternative, Defendants should not be required to litigate against (and this Court adjudicate) each of Plaintiff's proffered alternatives if they do not clear the pleading standard as a matter of law. Accordingly, Defendants respectfully suggest that in the interests of judicial economy, the Court treat each Eighth Amendment claim with multiple alternatives as multiple claims (or counts), each one with a single alternative, and dismiss the ones that fail to survive motion to dismiss.

**II.    Sixth Amendment**

Plaintiff has yet to plead any facts showing that an execution is a "critical stage" for Sixth Amendment purposes. *See* DE21:33-35. As the Eleventh Circuit explained in *Mills v. Hamm*, 102 F.4th 1245, 1249 (11th Cir. 2024), "The right to

counsel does not extend beyond the first appeal, and [Plaintiff] is far past that stage." As Plaintiff does not have a Sixth Amendment right to counsel during his execution, this claim is due to be dismissed.

### III.   Fourteenth Amendment

As Plaintiff notes, DE21:41, the parties are currently working on a joint motion for a protective order. Once such an order is entered, Defendants will provide to Plaintiff an unredacted copy of ADOC's execution protocol.

### CONCLUSION

For the above reasons and those cited in Defendants' motions to dismiss, Plaintiff's complaint is due to be dismissed. Further, Defendants oppose the declaratory and injunctive relief Plaintiff requested.

Respectfully submitted,

Steve Marshall
*Attorney General*

**/s/ Lauren A. Simpson**
Lauren A. Simpson
*Deputy Attorney General*

Polly S. Kenny
*Assistant Attorney General*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Lauren A. Simpson*
Lauren A. Simpson
*Deputy Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
Lauren.Simpson@AlabamaAG.gov